# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GUROBI OPTIMIZATION, LLC,<br><br>Defendant. | Civil Action No. 25-00194-RGA |

## MEMORANDUM OPINION

Joseph C. Schoell, FAEGRE DRINKER BIDDLE & REATH LLP, Wilmington, DE; Randall E. Kahnke, Nathaniel J. Zylstra, FAEGRE DRINKER BIDDLE & REATH LLP, Minneapolis, MN; Kevin H. DeMaio, FAEGRE DRINKER BIDDLE & REATH LLP, Florham Park, NJ,

    Attorneys for Plaintiff.

Thad J. Bracegirdle, Ronald P. Golden III, BAYARD, P.A., Wilmington, DE; John V. Matson, Kendra M. Vosler, KOLEY JESSEN, P.C., L.L.O, Omaha, NE,

    Attorneys for Defendant.

September 12, 2025

1

ANDREWS, U.S. DISTRICT JUDGE:

Before me is Defendant's Motion to Dismiss. (D.I. 25). The motion has been fully briefed. (D.I. 26, 53, 63). I heard oral argument on July 3, 2025, on Plaintiff's motion for preliminary injunction (D.I. 9), which involved some of the same issues (*see* D.I. 74). For the reasons set forth below, the three counts of Plaintiff's complaint are DISMISSED. Defendant's Motion for Preliminary Injunction (D.I. 9) is DISMISSED as moot.

## I. BACKGROUND

Plaintiff Fair Isaac ("FICO") is a "global leader in the development of optimization software solutions." (D.I. 1 ¶ 13). Defendant Gurobi is FICO's main competitor in this area. (*Id.*).

Dr. Oliver Bastert is a former employee of FICO. (*Id.* ¶ 1). Dr. Bastert worked for FICO for 17 years, "rising to become Vice President of Platform Management." (*Id.* ¶ 2). Dr. Bastert's position with FICO involved "strategic decision-making" and he "possesses intimate, detailed, and comprehensive knowledge of FICO's strengths, weaknesses, and strategy for developing and commercializing optimization software products and services." (*Id.* ¶¶ 2, 19). Part of Dr. Bastert's responsibilities focused on "positioning FICO's optimization solutions against Gurobi." (*Id.* ¶ 20). FICO alleges Dr. Bastert was privy to its trade secrets, including:

> (i) how FICO products have been developed, including their strengths, weaknesses, key technological differentiators, and the methods utilized to implement those differentiators; (ii) how FICO specifically plans to compete against Gurobi and others; (iii) FICO's strategic investment model, which FICO paid [Dr.] Bastert himself to create and includes details on how FICO would compete against Gurobi; (iv) FICO's optimization product pricing model; (v) FICO's customer and sales prospect lists for its optimization software products, including customers at-risk and the status of and strategic approach for current sales opportunities; and (vi) FICO's strategic business plans for product development and partner relationships, including FICO's strategic business plans for existing and potential new business partner relationships.

(*Id.* ¶ 61).

Despite being based in Germany while working for FICO, Dr. Bastert frequently traveled to the United States to "wor[k] on matters involving FICO's trade secrets and proprietary information" and Dr. Bastert's direct manager was based in the United States. (*Id.* ¶¶ 25–27). FICO therefore alleges that these trade secrets "were ultimately under the strategic direction and control of FICO's main operations in the United States." (*Id.* ¶ 29).

Upon joining FICO in 2008, Dr. Bastert signed contracts agreeing to keep FICO's proprietary information confidential during and after his employment. (*Id.* ¶¶ 31, 32; D.I. 13-1, Ex. B § 1). FICO takes other additional efforts to protect its trade secrets, such as requiring non-disclosure agreements and employing physical and cyber-security measures. (D.I. 1 ¶¶ 42–47).

In January of 2025, Dr. Bastert informed FICO that he would be leaving the company. (*Id.* ¶ 48). On February 14, Dr. Bastert confirmed in writing that he would be working for Gurobi, and he started at Gurobi three days later. (*Id.* ¶¶ 49–50). Dr. Bastert was hired as Gurobi's CTO. (*Id.* ¶ 51). Plaintiff's complaint alleges that, because Gurobi's business "focuses on optimization software products that directly compete with FICO," "[Dr.] Bastert's new position at Gurobi violates his contractual obligations to FICO and will inevitably lead him to disclose FICO's trade secrets and proprietary information." (*Id.* ¶¶ 52, 54). FICO further alleges that "it is not possible for [Dr.] Bastert to work [as CTO] for Gurobi without . . . using or disclosing FICO's trade secrets and proprietary information. He knows FICO's highly confidential, competitively valuable information, including trade secrets, and he cannot forget that information." (*Id.* ¶ 55).

As this lawsuit is against Gurobi and not Dr. Bastert, FICO alleges, "By hiring [Dr.] Bastert into a role where he cannot avoid using these trade secrets, Gurobi willfully and maliciously gained access to these trade secrets without any color of right." (*Id.* ¶ 69).

Defendant argues FICO's complaint fails to state a claim because (1) Dr. Bastert is employed by German entity Gurobi GmbH, not the named Defendant; (2) amendment to substitute Gurobi GmbH would be futile due to lack of personal jurisdiction; and (3) the doctrine of inevitable disclosure is inapplicable to DTSA claims. (D.I. 26 at 1–2). As discussed below, I find it necessary only to address Defendant's third argument.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Federal Rule of Civil Procedure 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting Twombly, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

4

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    DISCUSSION

### A. FICO's DTSA Claim

The Defend Trade Secrets Act ("DTSA") defines trade secret misappropriation, in part, as:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who--
> > (i) used improper means to acquire knowledge of the trade secret; [or]
> > (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--
> > > (I) derived from or through a person who had used improper means to acquire the trade secret;
> > > (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
> > > (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.]

18 U.S.C. § 1839(5)(A)–(B). The term "improper means" "includes . . . breach or inducement of a breach of duty to maintain secrecy[.]" *Id.* § 1839(6)(A).

Courts may grant an injunction under the DTSA

5

>   (i) to prevent any actual or threatened misappropriation [of a trade secret related to a product or service used in, or intended for use in, interstate or foreign commerce] . . . provided the order does not--
>    > (I) prevent a person from entering into an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows[.]

18 U.S.C. § 1836(b)(3)(A)(i).[1]

To recover under the DTSA, a plaintiff must demonstrate (1) the existence of a trade secret, and (2) misappropriation of that trade secret. *Battaglia Mgmt., Inc. v. Abramowicz*, 2024 WL 3183063, at *3 (D. Del. June 26, 2024). Gurobi does not contest that FICO has adequately plead the existence of a trade secret. (D.I. 26 at 12–13). Gurobi only argues that FICO has failed to plausibly allege actual or threatened misappropriation under the DTSA because FICO relies on the inevitable disclosure doctrine. (*Id*. at 13). Gurobi argues that the inevitable disclosure doctrine is "inapplicable under the terms of the DTSA." (*Id*.).

## B. Inevitable Disclosure Doctrine

The DTSA allows for injunctions in cases of both actual and threatened misappropriation of trade secrets. 18 U.S.C. § 1836(b)(3)(A)(i). An injunction may not, however, "prevent a person from entering into an employment relationship" and the DTSA requires that any "conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows."

---

[1] Plaintiff alleges it "will also suffer damages" unless Gurobi is enjoined from employing Dr. Bastert in this position. (D.I. 1 ¶ 72). The DTSA provides for a remedy of damages of "actual loss" and "unjust enrichment" or a "reasonable royalty" for harm caused by misappropriation. 18 U.S.C. § 1836(b)(3)(B). Unlike Section A, Section B provides a remedy only for misappropriation, not "threatened misappropriation." *See id*. § 1836(b)(3)(A). FICO cannot state a claim for damages under the DTSA for harm that has not yet occurred.

*Id.* § 1836(b)(3)(A)(i)(I). Courts disagree on whether this language precludes injunctions based on the doctrine of "inevitable disclosure."

The lack of clarity on this issue arises primarily because many plaintiffs assert claims under both state trade secret law and the DTSA and courts have often not differentiated between the requirements of the two. The only opinion FICO cites for the proposition that the Third Circuit has "implicitly recognized" the inevitable disclosure doctrine under the DTSA is *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 75–76 (3d Cir. 2017). (D.I. 53 ¶ 3). In *Fres-co*, the Third Circuit reviewed a grant of preliminary injunction and found, "Given the substantial overlap (if not identity) between Hawkins's work for Fres-co and his intended work for Transcontinental—same role, same industry, and same geographic region—the District Court was well within its discretion to conclude Hawkins would likely use his confidential knowledge to Fres-co's detriment." *Fres-co*, 690 F. App'x at 76.

First, *Fres-co* is non-precedential.

Second, the plaintiff in Fres-co filed suit alleging misappropriation of trade secrets under both Pennsylvania law and the DTSA. *Id.* at 74. In its analysis, the Third Circuit did not differentiate between the requirements of the Pennsylvania Uniform Trade Secret Act ("PUTSA") and the DTSA. It simply acknowledged that both statutes allowed injunctions based on "threatened misappropriation." *Id.* at 76. Pennsylvania trade secret law allows a person to be enjoined from "engaging in employment or certain aspects of his employment where that employment is likely to result in the disclosure of information[.]" *Air Prods. & Chems., Inc. v. Johnson*, 442 A.2d 1114, 1120 (Pa. Super. Ct. 1982); *see Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 110–12 (3d Cir. 2010) (noting that the court in *Air Products* "explicitly chose 'not [to] adopt the reasoning of the trial court or its use of the term inevitable'"). The Third Circuit in

*Fres-co* did not hold that the inevitable disclosure doctrine applies under the DTSA, and instead merely found that the District Court did not abuse its discretion in finding a likelihood of irreparable harm in support of an injunction under the facts of the case. *Id.* at 76.

Plaintiff also cites decisions by other district courts in the Third Circuit. *See Sunbelt Rentals, Inc. v. Love*, 2021 WL 82370 (D.N.J. Jan. 11, 2021); *Jazz Pharms., Inc. v. Synchrony Grp., LLC*, 343 F. Supp. 3d 434 (E.D. Pa. 2018); *Franklin Interiors, Inc. v. Wesolosky*, 2020 WL 8264115 (W.D. Pa. Oct. 21, 2020); *Acteon Inc. v. Harms*, 2020 WL 6694411 (D.N.J. Nov. 6, 2020). I do not think any of these cases is persuasive for the specific point in dispute here, that is, whether the inevitable disclosure doctrine applies to the DTSA claim.

*Jazz Pharmaceuticals* and *Sunbelt* were cases in which the plaintiff asserted both DTSA and state law claims. In *Jazz*, the district court did not differentiate between the requirements of the DTSA and PUTSA and found that the plaintiff had sufficiently pleaded actual misappropriation, not just threatened misappropriation. *Jazz Pharms.*, 343 F. Supp. 3d at 444–45. But alternatively, the *Jazz* court found the plaintiff had pleaded threatened misappropriation because the new employer "refused to ensure" that the plaintiff's trade secrets would be protected. *Id.* at 446.

*Sunbelt* too does not substantively differentiate between state and federal trade secrets law. Like *Jazz*, the district court in *Sunbelt* found that the plaintiff had demonstrated actual misappropriation, stating that "the evidence clearly demonstrates that Love improperly acquired and disclosed Sunbelt's trade secrets." *Sunbelt*, 2021 WL 82370, at *25. The *Sunbelt* court likewise alternatively found that "an employer may meet its burdens under the DTSA and NJTSA simply by demonstrating that there is a sufficient likelihood of inevitable disclosure of its trade secrets to a competitor." *Id.* (cleaned up). However, the case *Sunbelt* relied upon for this

8

proposition, *Acteon*, states without discussion that the "analysis under [the] DTSA folds into that of [the] NJTSA." *Acteon*, 2020 WL 6694411, at *9 (alterations in original) (citation omitted). *Acteon*, in turn, cites *Corporate Synergies* for inevitable disclosure. *Id.* (citing *Corp. Synergies Grp., LLC v. Andrews*, 2019 WL 3780098, at *7 n.10 (D.N.J. Aug. 12, 2019)). But *Corporate Synergies* involved alleged actual misappropriation, and only states, "New Jersey law permits a party to rely on the inevitable disclosure doctrine." *Corp. Synergies Grp.*, 2019 WL 3780098, at *7.

*Franklin Interiors* addressed whether the DTSA precluded the injunctive relief sought. Again, the plaintiff raised state law claims alongside a DTSA claim. The court found that an injunction was not precluded because the plaintiff's state law claims (not the DTSA) could support an injunction preventing the defendant's employment, and that the DTSA allowed for "injunctive relief to prohibit Defendants' continued use and disclosure" of the plaintiff's trade secrets. *Franklin Interiors*, 2020 WL 8264115, at *5–*6. The plaintiff also alleged that the defendant was in "current possession of" trade secrets and was "refus[ing] to return" them. *Id.* at *5. *Franklin Interiors* does not appear to be a case in which the defendant exclusively possessed knowledge in his head.

None of these cases undertook any analysis of the differences in language between the DTSA and state trade secrets law. This is probably due to the fact that, unlike FICO, the plaintiffs in these cases alleged state law trade secrets claims alongside their DTSA claims that could be supported by an inevitable disclosure theory. Differentiating was unnecessary. Plaintiff was also unable to cite to any cases from other Circuit Courts of Appeals on this issue of statutory interpretation of the DTSA. (D.I. 74 at 73:24–74:7).

Though out-of-circuit district court cases are inconsistent on the availability of the inevitable disclosure doctrine under the DTSA, a significant number in multiple circuits across the country have found that the doctrine is not available to support an injunction of the sort that Plaintiff requests.[2] *See, e.g.*, *WCG Clinical, Inc. v. Sitero, LLC*, 2025 WL 107662, at *3 (S.D. Ind. Jan. 15, 2025) ("Recently, courts in this circuit have held that '[w]hile 'inevitable disclosure' can be a viable theory under state law, it appears to be foreclosed for claims under the DTSA.'"); *Aon PLC v. Alliant Ins. Servs., Inc.*, 2023 WL 3914886, at *5 (N.D. Ill. June 9, 2023)(same, and "The civil remedies provision of DTSA precludes the imposition of injunctive relief for actual or threatened misappropriation based 'merely on the information the person knows.'"); *Sirius Fed., LLC v. Jelen*, 2023 WL 2213929, at *11 (D. Md. Feb. 24, 2023) ("Defendants correctly observe that Maryland courts have rejected the inevitable disclosure theory under both the Defend Trade Secrets Act and the Maryland Uniform Trade Secrets Act."); *Kinship Partners, Inc. v. Embark Veterinary, Inc.*, 2022 WL 72123, at *7 (D. Or. Jan. 3, 2022) ("Pursuant to federal law, the DTSA specifically forecloses courts from granting relief based on the inevitable disclosure doctrine *because* such relief restrains employment.").

---

[2] FICO seeks a permanent injunction providing that: "Gurobi shall not employ [Dr.] Bastert as CTO or in any other capacity in which the faithful performance of which it could be reasonably anticipated that [Dr.] Bastert would use or disclose FICO trade secrets or proprietary information." (D.I. 1 at 16).
    FICO also seeks that "Gurobi shall not acquire, use, or disclose FICO's trade secrets or proprietary information," "Gurobi shall take affirmative acts to protect FICO's trade secrets and proprietary information from use or disclosure," and "Gurobi shall immediately identify to FICO the identity of each person to whom Gurobi has provided or disclosed any of FICO's trade secrets or proprietary information." (*Id.*). Other than alleging inevitable disclosure through Gurobi's employment of Dr. Bastert, FICO's complaint does not plausibly allege that Gurobi currently possesses any of FICO's proprietary information or trade secrets such that it would be necessary to enjoin Gurobi. Dr. Bastert may not disclose any of that information pursuant to the confidentiality clauses in the agreements he signed with FICO. (*Id.* ¶¶ 31–41).

Gurobi relies heavily on the *IDEXX* case out of the District of Maine to support its argument. (D.I. 26 at 13–15); *IDEXX Lab'ys, Inc. v. Bilbrough*, 2022 WL 3042966 (D. Me. Aug. 2, 2022), *report and recommendation adopted*, 2022 WL 4940200 (D. Me. Oct. 4, 2022).

The court in *IDEXX* reviewed the language of the DTSA statute and determined,

> Because the inevitable disclosure doctrine permits relief without any proof of actual or an identified threat of disclosure under the theory that a person with certain information will necessarily use the information at some point in his or her new employment, the doctrine allows relief based 'merely on the information the person knows.' The plain language of the statute, therefore, forecloses application of the inevitable disclosure doctrine

to a DTSA-based claim requesting that a court enjoin a plaintiff from engaging in competitive employment. *Id.* at *5. The *IDEXX* court further supported its analysis with a review of the legislative history, which suggests that Congress revised the statute to its current form to preclude application of the inevitable disclosure doctrine in these situations. *Id.*

The *IDEXX* court found that the plaintiff had failed to state a claim under the DTSA and granted a motion to dismiss due to the plaintiff's reliance on inevitable disclosure in support of that claim. *Id.* at *6.

Similarly, I find that, to the extent FICO relies on the inevitable disclosure doctrine to plead threatened misappropriation, FICO has failed to state a claim under the DTSA. Dr. Bastert is bound by multiple agreements that bar him from disclosing FICO's trade secrets to his new employer. (D.I. 1 ¶ 31). That Dr. Bastert only provided FICO with a month's notice that he would be leaving (*Id.* ¶ 48) and that FICO failed to obtain "assurances" from Gurobi and Dr. Bastert (*Id.* ¶ 49), without more, does not plausibly allege that Dr. Bastert is untrustworthy or planning not to abide by his contractual obligations.

FICO does not allege that Dr. Bastert took any documents, customer lists, or schematics with him when he left FICO. Therefore, FICO does not allege that he has shared or plans to

share such items with Gurobi. The only trade secrets Dr. Bastert is alleged to possess reside inside his head. The DTSA does not allow for injunctions to "prevent a person from entering into an employment relationship" and requires that "conditions placed on such employment" be "based on evidence of threatened misappropriation and not merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A)(i)(I). The facts as stated in FICO's complaint do not state a plausible claim of threatened misappropriation.

Count I of FICO's complaint (D.I. 1 ¶¶ 60–72) is DISMISSED as far as it requests injunctive relief based on an inevitable disclosure theory and damages based on hypothetical future harm. Plaintiff requests leave to amend. (D.I. 53 at 20). I grant FICO leave to amend its complaint with facts supporting actual or threatened misappropriation.

### C. Supplemental Jurisdiction Over State Law Claims

In addition to FICO's DTSA claim, Counts II and III of FICO's complaint assert state law Tortious Interference With Contractual Relationship and Tortious Interference With Prospective Economic Advantage claims. (D.I. 1 ¶¶ 73–82).

Plaintiff is a Delaware corporation with its principal place of business in Bozeman, Montana. Defendant is a limited liability company organized under the laws of Delaware with its principal place of business in Beaverton, Oregon. (*Id.* ¶¶ 6–7). It is unclear what the citizenship of the members of Defendant are.

Plaintiff does not assert that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff's complaint only asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Count I of the complaint arises under the DTSA. (*Id.* ¶ 9).

I may exercise supplemental jurisdiction over claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28

U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over claims if it "dismiss[es] all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3).

As I dismiss Count I—FICO's federal DTSA claim—I decline to exercise jurisdiction over FICO's state law tortious interference claims. Counts II and III of FICO's complaint are DISMISSED without prejudice.

### D. Motion for Preliminary Injunction

Because I find that FICO has not stated a claim that would support an injunction under the DTSA, FICO's motion for a preliminary injunction (D.I. 9) on the same grounds is DISMISSED as moot.

### IV. CONCLUSION

An appropriate order will issue.